UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

─────────────────────────────────

JAMES CLINTON WREN,                          Civil No. 07-4353 (JNE/JSM)

       Petitioner,

v.                                                        **REPORT AND RECOMMENDATION**

JOAN FABIAN,
Commissioner of Corrections,

       Respondent.

─────────────────────────────────

    James Clinton Wren, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082-1117, Petitioner, pro se.

    J. Michael Richardson, Assistant Hennepin County Attorney, C-2000 Government Center, Minneapolis, Minnesota, 55487, for Respondent.

─────────────────────────────────────────────

JANIE S. MAYERON, United States Magistrate Judge

    This matter is before the undersigned Magistrate Judge of the District Court on the petition of James Clinton Wren for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

    On March 4, 2005, two men were shot and killed at a restaurant in Minneapolis. The police investigated the crime, and concluded that Petitioner had shot both men, while attempting to kill a third man who was in the restaurant. A grand jury indicted Petitioner on two counts of first degree murder, and one count of attempted first degree murder. A jury

later found Petitioner guilty of all three charges.[1]  Petitioner was sentenced to two consecutive terms of life in prison for the two murder convictions, and an additional consecutive term of 200 months in prison for the attempted murder conviction.  He is presently serving his sentence at the Minnesota Correctional Facility in Oak Park Heights, Minnesota.

After Petitioner was convicted and sentenced, he filed a direct appeal in the Minnesota Supreme Court.[2]  His appellate counsel filed a brief that raised several claims, including (1) that the trial court wrongly granted the prosecution's motion to empanel an "anonymous jury," and (2) that the trial court wrongly allowed the prosecution to strike two prospective jurors based allegedly on their race.  Petitioner also filed a separate pro se brief that raised several additional claims, including a challenge to the grand jury proceedings.

In a published decision dated September 13, 2007, the Minnesota Supreme Court rejected all of the claims raised in Petitioner's direct appeal, and affirmed his conviction and sentence.  State v. Wren, 738 N.W.2d 378 (Minn. 2007).  In its decision, the claims raised by Petitioner's counsel, and most of Petitioner's pro se claims, were addressed and denied on the merits.  However, the Supreme Court refused to consider the merits of Petitioner's pro se challenge to the grand jury proceedings because that claim had not been properly

---

[1]  The evidence on which Petitioner's conviction was based is outlined in the Minnesota Supreme Court's decision on his direct appeal.  State v. Wren, 738 N.W.2d 378, 383-85 (Minn. 2007).  That evidence is not discussed here, because it is not directly relevant to any of the claims presented in Petitioner's current habeas corpus petition.

[2]  Under Minnesota law, appeals in first degree murder cases are taken directly to the State Supreme Court, rather than the Minnesota Court of Appeals.  Minn.Stat. § 632.14.

preserved for appellate review.  Petitioner is now seeking federal habeas corpus review of his conviction.

The present petition lists four grounds for relief.  The first two grounds pertain to the grand jury proceedings in this case.  Petitioner claims that the grand jury's indictment was not supported by sufficient evidence (Ground One), and that the grand jury was "illegally constituted" (Ground Two).  Petitioner further claims that the trial court erred by empaneling an anonymous jury (Ground Three), and that two prospective jurors were wrongly stricken based solely on race (Ground Four).

Respondent concedes that Petitioner has exhausted his state court remedies. (Respondent's "Amended Memorandum," [Docket 12], p. 2.)  However, Respondent contends that Petitioner's first two grounds for relief (pertaining to the grand jury proceedings), have been procedurally defaulted, because the Minnesota Supreme Court refused to address those claims on the merits, based on state procedural rules.  As to Petitioner's final two claims, pertaining to the anonymous jury and the two stricken jurors, Respondent assets that they must be denied on the merits.  The Court finds that all of Respondent's contentions must be sustained.

## II.    PROCEDURALLY DEFAULTED CLAIMS (GROUNDS ONE AND TWO)

A.    <u>Applicable Legal Rules</u>

When a state appellate court has expressly declined to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim is considered to be "procedurally defaulted" for federal habeas corpus purposes.  As the Eighth Circuit Court of Appeals explained in <u>Hall v. Delo</u>, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to

decide the federal claim on the merits because the petitioner violated a state procedural rule." See also McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), (quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996)); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) ("[o]rdinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules").

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  In other words, Petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer

some new evidence which affirmatively demonstrates that he is innocent of the crime for which he was convicted.[3]

    B.    <u>Petitioner's Procedurally Defaulted Claims</u>

Respondent contends that Grounds One and Two of the present petition, which pertain to Petitioner's grand jury proceedings, have been procedurally defaulted because the Minnesota Supreme Court found that Petitioner had waived his right to have those claims reviewed on direct appeal.  This argument must be sustained.

The Minnesota Supreme Court refused to consider the merits of any of Petitioner's claims pertaining to the grand jury proceedings in his case, because those claims had not been properly preserved for appellate review in the manner prescribed by the State's procedural rules.[4]  The Court explained that:

---

[3]  The Eighth Circuit Court of Appeals has further explained that –

The actual innocence exception is concerned with claims of actual, not legal innocence.  <u>Anderson v. United States</u>, 25 F.3d 704, 707 (8th Cir. 1994).  It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.  Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [<u>Schlup</u>, 513 U.S. at 324.]  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, <u>see</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, <u>see</u> <u>Schlup</u>, 513 U.S. [at 324]... and exculpatory scientific evidence.

<u>Pitts v. Norris</u>, 85 F.3d 348, 350-51 (8th Cir.), <u>cert</u>. <u>denied</u>, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" <u>Johnson v. Norris</u>, 170 F.3d 816, 817 (8th Cir. 1999), quoting <u>Armine v. Bowersox</u>, 128 F.3d 1222, 1230 (8th Cir. 1997) (<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 523 U.S. 1123 (1998).

[4]  The Court assumed, for present purposes, that both of Petitioner's current grand jury claims, (i.e., Grounds One and Two of the present petition), were raised in his pro se brief to the Minnesota Supreme Court.  It appears however that Ground Two, which pertains to the summoning and selection of the grand jury, was not raised by Petitioner in his brief to the Supreme Court.  <u>See</u> Defendant's Exhibits, Ex. B (Appellant's Pro Se

5

An objection to an indictment must be made by a pretrial motion as provided by Minn. R.Crim. P. 10.01.  Minn. R.Crim. P. 17.06, subd. 2.  <u>A failure to include any objections to an indictment in a motion pursuant to Minn. R.Crim. P. 10.01 constitutes a waiver</u>, unless the objection to the indictment is due to the court's lack of jurisdiction over the offense or the failure of the indictment to charge an offense.  Minn. R.Crim. P. 10.03.  But for good cause shown, we may grant relief notwithstanding the waiver.  <u>Id</u>.  Wren does not provide a reason why he failed to raise his arguments in a pretrial motion to dismiss, and <u>we therefore conclude that the issues relating to the indictment are waived</u>.

<u>Wren</u>, 738 N.W.2d at 395 (emphasis added).

"A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds."  <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004) <u>cert</u>. <u>denied</u>, 518 U.S. 828 (2005).  In this case, the Minnesota Supreme Court clearly disposed of Petitioner's grand jury claims solely on state procedural grounds. Therefore, those claims have been procedurally defaulted for federal habeas purposes.[5]

---

Supplemental Brief filed in Minnesota Supreme Court) [Docket No. 14].  Thus, it is even more clear that the second grand jury claim has been procedurally defaulted.  <u>See</u> <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir.) ("[i]n the absence of cause and prejudice, or a sufficient showing of likely actual innocence, a federal habeas court may consider only those issues which have been raised and fairly presented to the state courts"), <u>cert</u>. <u>denied</u>, 518 U.S. 1029 (1996).

[5]   Petitioner may believe that the Minnesota state courts misapplied the State's procedural rules to his claims pertaining to his indictment, (<u>see</u> Petitioner's "Reply Memorandum," [Docket No. 18], p. 1), but that is a matter that cannot properly be considered here because "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law."  <u>Murray v. Hvass</u>, 269 F.3d 896, 899 (8th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 935 (2002).  <u>See</u> also <u>Clemons</u>, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim").

C.     Cause and Prejudice

Having determined that Petitioner's first two grounds for relief have been procedurally defaulted, the only remaining issue to be resolved with regard to those two claims, is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default.  The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard or the actual innocence standard with regard to his procedurally defaulted claims.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner.  Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original).

Petitioner seems to be claiming that his procedural default was caused by ineffective assistance of counsel.  He contends that his "counsel must have been ineffective for not filing the Motion" that could have preserved his grand jury claims for appellate review. ("Reply Memorandum," [Docket No. 18], p. 2.)  However, ineffective assistance of counsel cannot serve as cause to excuse a procedural default, unless the proffered ineffective assistance argument has been fairly presented to the state courts as an independent challenge to the validity of the conviction or sentence at issue.  Edwards v. Carpenter, 529 U.S. 446, 452 (2000) ("'a claim of ineffective assistance'... must 'be presented to the state courts as an independent claim before it may be used to establish cause for a

procedural default'") (quoting <u>Murray v. Carrier</u>, 477 U.S. at 489).  <u>See also Bailey v. Mapes</u>, 358 F.3d 1002, 1004 (8th Cir. 2004) ("[a]lthough constitutionally ineffective assistance can serve as a 'cause' excusing a procedural default, the ineffective assistance claim must be raised in the state postconviction proceedings before it can be relied upon in a federal habeas proceeding"); <u>Wyldes v. Hundley</u>, 69 F.3d 247, 253 (8th Cir. 1995) ("[t]he Supreme Court has stated, and we, naturally, have insisted, that 'a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default'") (quoting <u>Murray</u>, 477 U.S. at 489), <u>cert</u>. <u>denied</u>, 517 U.S. 1172 (1996).

As Petitioner did not present an ineffective assistance of counsel claim to the Minnesota Supreme Court, such a claim cannot now serve as cause for his procedural default.  Thus, the Court finds that Petitioner has shown no legally viable external cause to excuse his procedural default.  Further, because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component.  <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1010 (1998) (same).

Finally, Petitioner does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crimes for which he was convicted.  All of Petitioner's current claims for relief involve alleged procedural errors, which purportedly occurred before any evidence was presented at his trial.  He has not cited any new and previously undiscoverable evidence, which would prove that he is, in fact, wholly innocent of the crimes for which he was convicted.  Therefore, he

cannot overcome his procedural default by way of the actual innocence exception. Because Petitioner is unable to overcome his procedural default, his first two claims for relief cannot be addressed on the merits here.[6]

## III.   GROUNDS THREE AND FOUR

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern this Court's substantive review of Petitioner's non-defaulted habeas corpus claims.  The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6]  It should be noted that Petitioner's first two claims for relief are unsustainable in any event.  As Respondent has correctly pointed out, Petitioner's ultimate conviction by a petit jury effectively invalidates any post-verdict challenge to the propriety of the grand jury proceedings.  United States v. Mechanik, 475 U.S. 66, 70 (1986) ("the petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted").  See also United States v. Tulk, 171 F.3d 596, 598 (8th Cir. 1999) ("[a]ny injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt").  Furthermore, it is difficult to understand how Petitioner's federal constitutional rights could have been violated by anything that may have occurred during the course of his state grand jury proceeding when the federal Constitution does not require states to conduct any grand jury proceedings at all.  Cooksey v. Delo, 94 F.3d 1214, 1217 (8th Cir. 1996), cert. denied, 522 U.S. 1027 (1997), citing Hurtado v. California, 110 U.S. 516 (1884).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts.  The Supreme Court recognized that

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

<u>Id</u>. at 405.

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id</u>. at 413.

The Court also explained that

> A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

<u>Id</u>. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, habeas relief can be granted if the conviction is based on findings of fact that could

not reasonably be derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims.  Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

B.    "Anonymous Jury" Claim (Ground Three)

In Ground Three of the current habeas corpus petition, Petitioner claims that "the trial court erred in impaneling an Anonymous Jury." (Petition, p. (6), ¶ 12.C.)  Petitioner contends that he was deprived of his constitutional right to a fair trial, because the names of the jurors who convicted him were known only to the "trial judge, the judge's clerks, and the head of the jury office."  Wren, 738 N.W.2d at 385.

The United States Supreme Court has never held, or even intimated, that anonymous juries are unconstitutional.  Therefore, Petitioner is unable to show that the Minnesota Supreme Court's adjudication of his anonymous jury claim is "contrary to... clearly established Federal law, as determined by the Supreme Court of the United States."

Petitioner is also unable to show that the Minnesota Supreme Court's resolution of his anonymous jury claim "involved an unreasonable application of" U.S. Supreme Court case law.  To the contrary, the Court finds that the state court's resolution of the anonymous jury claim is entirely reasonable because it is consistent with the generally accepted principles governing the use of anonymous juries.

The Eighth Circuit Court of Appeals discussed the use of anonymous juries in <u>United States v. Darden</u>, 70 F.3d 1507 (8th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1149 (1996).  The Court began its discussion by acknowledging "the danger that the use of an anonymous jury could prejudice jurors against the defendants."  <u>Id</u>. at 1532.  However, the Court also recognized that "[e]very court that has considered the issue has concluded that in appropriate circumstances the empanelment of an anonymous jury does not fringe on the right to an impartial jury."  <u>Id</u>.  Following the lead of three other federal circuit courts, the Eighth Circuit held in <u>Darden</u> that anonymous juries can be used if the trial court judge (1) finds "'strong reason to believe the jury needs protection,'" and (2) takes "'reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'"  <u>Id</u>. (quoting <u>United States v. Paccione</u>, 949 F.2d 1183, 1192 (2nd Cir. 1991), <u>cert</u>. <u>denied</u>, 505 U.S. 1220 (1992), and also citing <u>United States v. Edmond</u>, 52 F.3d 1080, 1090 (D.C.Cir.), <u>cert</u>. <u>denied</u>, 516 U.S. 998 (1995); <u>United States v. Ross</u>, 33 F.3d 1507, 1520 (11th Cir. 1994), <u>cert</u>. <u>denied</u>, 515 U.S. 1132 (1995)).

The Minnesota Supreme Court's decision in Petitioner's case followed the principles discussed in <u>Darden</u>.  The state court began its analysis by recognizing, as did the Eighth Circuit in <u>Darden</u>, that an anonymous jury poses a risk to a defendant's right to a fair trial. <u>Wren</u>, 738 N.W.2d at 385 (acknowledging "'the possibility that anonymity may lead jurors to infer that the accused is guilty of the crime charged and thereby burden his presumption of innocence'") (quoting <u>State v. Bowles</u>, 530 N.W.2d 521, 530 (Minn. 1995)).  The Court then recited a pair of guidelines governing the use of anonymous juries, which are virtually identical to the guidelines adopted in <u>Darden</u>, namely: (1) there must be "'strong reason to believe that the jury needs protection from external threats to its members' safety or impartiality,'" and (2) the trial court must "take[ ] reasonable precautions to minimize any

12

possible prejudicial effect the jurors' anonymity might have on the defendant.'" Wren, 738 N.W.2d at 385, quoting Bowles, 530 N.W.2d at 530-31.

In Petitioner's case, the trial court judge cited three reasons to believe that the jurors should remain anonymous to ensure their safety and impartiality: (1) a potential trial witness had been assaulted, (2) retaliation was the alleged motive for the crime, and thus the jurors might have reason to fear retaliation against themselves, and (3) there was some "potential gang affiliation evidence," which could suggest a need for juror anonymity. Wren, 738 N.W.2d at 386. Although the Minnesota Supreme Court did not adopt the trial court's reasons for empaneling an anonymous jury, Petitioner's conviction was nevertheless upheld, because of the precautions that were taken to minimize any possible prejudice to Petitioner. Id.

The Minnesota Supreme Court cited three specific precautionary measures that effectively minimized any potential prejudice related to the use of an anonymous jury. First, the prospective jurors were informed that they would remain anonymous to protect them from the media, rather than to protect them from Petitioner or his associates. Second, extensive voir dire and extra pre-emptive strikes were allowed to ensure the selection of an impartial jury. Third, special instructions were given to the jury to ensure that the jurors fully appreciated the presumption of Petitioner's innocence. Id. at 386-87. The first two of these precautions were used and approved in Darden.[7] The third precaution, i.e., the special jury instruction, added even more protection against the risk of prejudice.

The Minnesota Supreme Court found that the precautions used by the trial court

_____

[7] In Darden, "[t]he [trial] court told the venirepersons that they were being identified by numbers rather than their names so that members of the media would not ask them questions.... [and] a thorough voir dire was conducted." 70 F.3d at 1533.

created a presumption that Petitioner had not been prejudiced by the use of an anonymous jury. <u>Wren</u>, 738 N.W.2d at 387.  The Court further found that Petitioner was unable to overcome that presumption, because he failed to "demonstrate[ ] that he suffered actual prejudice from the use of an anonymous jury." <u>Id</u>.  Thus, the Court concluded that "any error in the use of such a jury here does not entitle [Petitioner] to a new trial." <u>Id</u>.

This Court now finds that the Minnesota Supreme Court's resolution of Petitioner's anonymous jury claim did <u>not</u> involve an objectively unreasonable application of any ruling by the United States Supreme Court.  The U.S. Supreme Court has never held that the use of an anonymous jury is inherently prejudicial, and Petitioner has not cited any other court that has reached that conclusion.

Furthermore, the manner in which the Minnesota Supreme Court resolved Petitioner's anonymous jury claim is supported by federal case law.  In <u>United States v. Mansoori</u>, 304 F.3d 635 (7th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 967 (2003), the Seventh Circuit Court of Appeals found that the trial court judge had failed to identify sufficient reasons "to justify the unusual step of juror anonymity." <u>Id</u>. at 651.  However, the Court nevertheless concluded that, in light of the extra precautions that were taken to minimize any potential prejudice, "the defendants' right to an unbiased jury was protected," and defendants were not deprived of their constitutional right to a fair trial. <u>Id</u>. at 652.  <u>Mansoori</u> shows that it was not unreasonable for the Minnesota Supreme Court to reject Petitioner's bid for a new trial, even though the Court rejected the trial court's reasons that the jury needed protection.  <u>Wren</u>, 738 N.W.2d at 385.

Again, the Minnesota Supreme Court determined that Petitioner was not prejudiced by the use of an anonymous jury, because of the extra precautionary measures that were used to counteract the risk of prejudice.  Based on that determination, the Minnesota

14

reasonably concluded that Petitioner had not been deprived of his constitutional right to a fair trial before an impartial jury, and he was therefore not entitled to a new trial.[8] Petitioner has failed to show that this conclusion was contrary to, or involved an unreasonable application of, any ruling by the United States Supreme Court. Therefore, Petitioner is not entitled to a writ of habeas corpus on his anonymous jury claim.

C.    Batson Claim (Ground Four)

In Petitioner's fourth ground for relief, he contends that his constitutional rights were violated because the prosecutor did not provide a "race neutral reason for striking" two non-Caucasian members of the jury panel. This claim is based on Batson v. Kentucky, 476 U.S. 79 (1986), where the Supreme Court held that prosecutors cannot strike a prospective juror because of his or her race.

If a criminal defendant claims that a prosecutor has exercised a peremptory challenge based on the race of a prospective juror, a three-step process is used to determine whether the claim has merit. First, the defendant must make a prima facie showing that the prospective juror is a member of an identifiable racial group, and that there is some particular reason to suspect that he or she may have been stricken because of his or her race. Second, if the defendant makes the requisite prima facie showing, then the prosecutor must offer some racially neutral reason for striking the potential juror in question. Third, the court must determine whether the reason offered by the prosecution

---

[8] This Court recognizes, as did the court in Mansoori, that the use of an anonymous jury will not be viewed as "harmless error" in all cases. See Mansoori, 304 F.3d at 652 (acknowledging the Fifth Circuit Court of Appeals' decision in United States v. Sanchez, 74 F.3d 562 (5th Cir. 1996), which "suggested that an erroneous decision to empanel an anonymous jury is not harmless where almost none of the pertinent factors supported that decision"). However, Mansoori clearly shows that the use of an anonymous jury can be amenable to harmless error analysis.

is genuine or merely pretextual.  Id. at 96-98; Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam); Snyder v. Louisiana, 128 S.Ct. 1203, 1207 (2008).

In this case, Petitioner challenged two of the prosecution's peremptory strikes based on Batson.  The first of those two strikes removed a potential juror, identified as "prospective juror 17," who "grew up in Somalia and Kenya, and who was listed as black or African American on the juror profile list."  Wren, 738 N.W.2d at 387-88.  The other challenged peremptory strike removed a Native American member of the jury panel, identified as "prospective juror 57."  Id. at 389.  Petitioner promptly challenged the prosecution's peremptory strikes against prospective jurors 17 and 57, claiming that they were stricken based on race.  Immediately after each challenge was made, the trial court applied the three-step Batson analysis.  (The trial transcript of the proceedings involving prospective jurors 17 and 57 is included in the present record at Docket No. 14, Appendix E, Trial Transcript ["Tr."] pp. 554-580, 789-806.)

With regard to prospective juror 17, the African American who grew up in Somalia and Kenya, the trial court found that Petitioner had "established a prima facie case under step one of the [Batson] analysis."  Wren, 738 N.W.2d at 388.  At step two, the prosecution asserted that prospective juror 17 was stricken not because of his race, but because he "had language issues," "did not give responses in full sentences," and "struggled with... questions about proof beyond a reasonable doubt."  Id.  The trial court found that the prosecution had offered a plausible, non-racial, explanation for striking prospective juror 17, and the Batson analysis proceeded to step three.  Petitioner argued that the prosecution's allegedly race-neutral reason for striking prospective juror 17 was "mere pretext for discrimination because juror 17 had no language problem."  Id.  The trial court rejected that argument, finding that prospective juror 17 had not "'exhibited fluency or

16

understanding when he gave responses'" during voir dire, and he was otherwise "'having some communication problems.'"  Id., at 389.

With regard to prospective juror 57, the Native American, Petitioner's <u>Batson</u> challenge was rejected at step one of the prescribed analysis because the trial court found no reason to believe that prospective juror 57 was stricken due to his race.  "On his juror questionnaire, in response to a question about his feelings toward law enforcement officials, prospective juror 57 responded, 'Sometimes they are vary [sic] unfair.  I don't trust them.'"  <u>Id</u>.  "[P]rospective juror 57 [also] stated that he felt he had been the victim of racial profiling on several occasions because, while driving, he had been followed by police."  <u>Id</u>. The trial court found that "the entire line of [voir dire] questioning regarding the prospective juror's experiences with police was not about race but rather his feelings toward the police." <u>Id</u>.   Therefore, Petitioner's <u>Batson</u> challenge to prospective juror 57 was summarily rejected.

Petitioner re-raised both of his <u>Batson</u> challenges in his direct appeal.  The Minnesota Supreme Court restated the three-step <u>Batson</u> analysis, (<u>id</u>. at 387), and found that it had been properly applied by the trial court.  Addressing the strike against prospective juror 17, the Minnesota Supreme Court pointed out that the trial court judge "was able to observe prospective juror 17's oral language skills during voir dire," and that the trial court's observations were entitled to special deference "because it is difficult to review a record for evidence of a prospective juror's language difficulties."  <u>Id</u>. at 388-89. Similar deference was accorded to the trial court's rationale for upholding the peremptory strike of prospective juror 57.  <u>Id</u>. at 389.

Petitioner has made no specific effort to show that the state courts' resolution of his

Batson challenges was contrary to, or involved an objectively unreasonable application of,

any U.S. Supreme Court decision.  He argues only that:

> [1] The prosecutor didn't provide a race neutral reason for striking potential minority jurors. [2] The reason wasn't clear, specific or legitimate. [3] Here, the prosecutor's assertions that a juror was prejudiced against the Minneapolis Police Department and that another had language difficulties were unsupported by the record.

(Petition, p. (6), ¶ 12.D.)  None of these arguments is sustainable.

First, the prosecutor did provide a race neutral reason for striking prospective juror

17.  The prosecutor explained that he exercised a peremptory strike against prospective

juror 17 because English was not his native language, and he appeared to have a language

problem that would make it difficult for him to understand all of the evidence and all of the

jury instructions.  The prosecutor was not called upon to offer a race neutral reason for

striking prospective juror 57 because Petitioner did not satisfy his burden at step one of the

Batson analysis, of presenting a prima facie case of racial discrimination.   As later

explained by the Minnesota Supreme Court, the trial court judge found that

> the entire line of questioning regarding the prospective juror's experiences with police was not about race but rather his feelings toward police, and that after listening to his answers during voir dire, the court felt that there was 'suspicion left... regarding his ability to judge the testimony of a police officer.'

Wren, 738 N.W.2d at 389.

The second part of Petitioner's current Batson argument must be rejected because

the prosecutor's reasons for striking prospective jurors 17 and 57 were very "clear and

specific."  Prospective juror 17 was stricken because of concerns about his English skills,

and prospective juror 57 was stricken because of concerns about his bias against police

18

officers.   Furthermore, the prosecutor's reasons were not only sufficiently "clear and specific," but they also were "legitimate."   See United States v. Canoy, 38 F.3d 893, 900 (7th Cir. 1994) (prosecution's peremptory strike based on concerns about prospective juror's language skills can survive Batson challenge); United States v. Cervantes-Perez, No. 98-50713 (9th Cir. 1999), 1999 WL 650569, *1 (unpublished opinion) ("difficulty with English constitutes a race-neutral justification for a peremptory strike"), cert. denied, 529 U.S. 1056 (2000); United States v. Gainer, 151 Fed.Appx. 887, 889 (11th Cir. 2005) (unpublished opinion) (prosecution's strike of a prospective minority juror survived Batson challenge, because "she demonstrated language-based difficulty understanding terms in the indictment and communicating with the court"); United States v. Moore, 149 F.3d 773, 780 (8th Cir.) (Batson challenge was properly rejected based on prosecutor's belief that prospective juror "could not put aside a bias against police officers"), cert. denied, 525 U.S. 1030 (1998); Toralba v. Giurbino, No. CV F 06-00967 (E.D.Cal. 2008), 2008 WL 619050, *7 ("[c]omplaints of police harassment or prior arrests are sufficient grounds to justify use of a peremptory challenge").

Finally, the record in this case provides ample evidentiary support for the state courts' rulings on Petitioner's Batson challenges.  The record shows that prospective juror 17 spoke in broken English and incomplete sentences, (Tr. 790, 793), and he had difficulty understanding questions about the burden of proof beyond a reasonable doubt, (Tr. 791). The trial judge found that prospective juror 17 "was having some communication problems; they were not extraordinary, but they could enter in." (Tr. 799.)  The judge concluded that there was "a valid reason to be concerned" about prospective juror 17's language difficulties. (Tr. 799.)  The Minnesota Supreme Court subsequently noted that –

> The district court was able to observe prospective juror 17's oral language skills during voir dire. We give due deference to the district court on this issue because it is difficult to review a record for evidence of a prospective juror's language difficulties. The district court observed that in addition to understanding the burden of proof, jurors must communicate well with other jurors when deliberating and need a certain amount of language skill, and prospective juror 17 was not demonstrating that ability.

Wren, 738 N.W.2d at 388 -389.

The trial court judge's assessment of prospective juror 17's language skills was based on first-hand observations of his speech patterns, inflections, facial expressions and demeanor. Those observations were a critical component of the Batson analysis in this case, and the trial court judge was in a unique position to make those observations. Based on the transcript of the voir dire testimony, and bearing in mind the trial judge's uniquely qualified observations about that testimony, the Court rejects Petitioner's contention that the prosecutor's concerns about prospective juror 17 were "unsupported by the record."

The Court also rejects Petitioner's contention that the prosecutor's concerns about prospective juror 57 were unsupported by the record. Prospective juror 57 said that he thought Minneapolis police officers had followed him while he was driving, and were "profiling" him. (Tr. 556-57.) He believed that when he was driving, the police would follow him around "maybe about once a month," (Tr. 557), and he could not say for sure whether he harbored a distrust for the police that would cause him to be prejudiced against the police involved in Petitioner's case. (Tr. 563.) Thus, the record does provide support for the prosecutor's concern that prospective juror 57 might be prejudiced against the police.

In sum, Petitioner has not shown that the Minnesota state courts resolved his Batson claims in a manner that is contrary to, or constitutes an objectively unreasonable application of, any United States Supreme Court precedent. Nor has Petitioner shown that

the state courts' resolution of his <u>Batson</u> claims is based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).  This Court finds that the Minnesota state courts fully recognized, and diligently and reasonably applied, the principles set forth in <u>Batson</u> and its progeny.  The Court further finds that the state courts rulings on Petitioner's <u>Batson</u> challenges are adequately supported by the record.  Thus, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on his <u>Batson</u> claims.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2.   This action be DISMISSED WITH PREJUDICE.

Dated:   October 15, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 3, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.